The Honorable Tana Lin

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MUNIR WALJI,<br><br>Defendant. | NO. CR23-011 TL<br><br>GOVERNMENT'S TRIAL BRIEF |

The United States of America, through Tessa M. Gorman, United States Attorney for the Western District of Washington, and Brian Wynne, Assistant United States Attorney, and Laura Harmon, Special Assistant United States Attorney, respectfully submits this trial brief in the above-captioned case.

## I.   INTRODUCTION

On January 25, 2023, Defendant Munir Walji was charged by Indictment with Count 1: Sexual Abuse of a Minor in Special Aircraft Jurisdiction, in violation of Title 18 United States Code, Sections 2243(a), 2246(2) and Title 49 United States Code, Section 46506(1) and Count 2: Abusive Sexual Contact in Special Aircraft Jurisdiction, in violation of Title 18 United States Code, Section 2244(b) and Title 49 United States Code, Section 46506(1). Dkt. 1.

Government's Trial Brief – 1
United States v. Walji, CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On August 14, 2024, Defendant Munir Walji was charged by Superseding Indictment again with Count 1: Sexual Abuse of a Minor in Special Aircraft Jurisdiction, in violation of Title 18 United States Code, Sections 2243(a), 2246(2) and Title 49 United States Code, Section 46506(1) and Count 2: Abusive Sexual Contact in Special Aircraft Jurisdiction, in violation of Title 18 United States Code, Section 2244(b) and Title 49 United States Code, Section 46506(1). Dkt. 125. The Superseding Indictment specified in Count 2 Walji intentionally touched without permission MV1's *inner* thigh and vagina. *Id*. (Emphasis added).

The government expects to call approximately fifteen witnesses and introduce approximately ten exhibits. The government anticipates that it can present its case-in-chief in approximately three days, not including voir dire, opening statement, and closing argument.

## II.   FACTUAL SUMMARY

On November 10, 2021, 15-year-old Minor Victim 1 (MV1), boarded Delta Air Lines Flight #339 in Atlanta, Georgia with her mother Wendi Manumalo. The two had been visiting family and were returning to Anchorage via Seattle-Tacoma International Airport. Ms. Manumalo sat next to the window on the right side of the aircraft in row 25. MV1 sat next to her mother in the middle seat, 25B. To MV1's right, sat Munir Walji.

Walji began to speak with MV1 and her mother. He spoke to them on various topics. He spoke about his personal history, business, and people he knew. He also spoke encouragingly to MV1, who was a sophomore in high school. In doing so, he encouraged her in her aspirations and told her she needed to use good judgment and that she needed discipline. At one point, he offered to buy a glass of wine for MV1's mother and he shared freshly baked cookies he said he obtained in the Delta Air Lines executive lounge.

MV1 settled in and started listening to music. Walji reached across her torso more than once and nearly touched her chest in doing so. MV1 tried to ignore the behavior. During the course of the flight, Delta Air Lines flight attendant Mackenzie Thornquist served drinks to Walji. During the first service of the flight, Ms. Thornquist served Walji

Government's Trial Brief – 2
*United States v. Walji*, CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

two bourbons. Because the flight was an evening flight, the cabin lights were dimmed during the time in-flight service curtailed. Ms. Manumalo fell asleep. Eventually, MV1 drifted off to sleep too.

Near the end of the cross-country flight, MV1 awoke to the sensation of Walji touching her leg. As she awoke, she saw his finger on his left hand was touching her leg. She did not think much of it, until a short time later, when he moved his entire hand onto her leg. He moved his hand higher on her thigh. MV1 felt panic. She tried to alert her sleeping mother by tapping her, but her efforts were unsuccessful. Then, Walji removed his hand from MV1's leg, which brought relief to MV1 as she thought it was all over. It was not over.

Walji placed his hand on her leg again and continued groping her. He moved his hand higher on her thigh and moved it to her inner thigh. Then he moved it close to her vagina and later onto her hip, where he rubbed her. Walji laid his head on her, and then with his right hand, unbuckled her lap seatbelt. Walji lifted her jacket and moved his hand toward her waistband. Walji placed his hand inside her pants under her underwear. While his hand was inside her pants beneath her underwear, he moved his fingers in a circular motion and touched her genitalia. MV1 then said something to the effect of, "What the f***?" Walji quickly removed his hand from her pants and turned away from her and pretended to sleep.

MV1 successfully awoke her mother. Ms. Manumalo saw tears in her daughter's eyes and heard her hyperventilating and she tried to speak. MV1's voice was shaky as she spoke. MV1 told her mother the man next to her placed his hand on her leg, moved his hand up her leg and then down her pants and underwear. Ms. Manumalo did not know what to do. She got Walji's attention and confronted him. Walji said he did not do that. Ms. Manumalo then called for a flight attendant by pressing the row's call light. As she did so, Walji touched MV1's arm and said he was sorry she would think he would do that to her.

Flight attendant Nicole Betson arrived at row 25 and spoke with Ms. Manumalo. Ms. Manumalo told her MV1 had been touched inappropriately by Walji. Ms. Betson

Government's Trial Brief – 3
*United States v. Walji*, CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

noticed Walji appeared to be asleep while seated. Ms. Betson went to the back of the plane and consulted with colleagues Ms. Thornquist and Jordan Dimick.

Ms. Thornquist returned to row 25 and in an attempt to keep matters calm, used a ruse of asking MV1 and Ms. Manumalo if they wanted to review the airlines snacks as a way of successfully getting them out of the row. As she did so, Walji said to Ms. Thornquist, "she told me what I did."

MV1 and her mother then went to the back of the plane. There, MV1, while crying, recounted for the flight attendants what had transpired. While in the back of the plane, Ms. Manumalo saw Walji stand up and look back at them. The flight attendants reseated MV1 and her mother in preparation for landing. They also consulted with the flight crew, who advised they would alert authorities at the airport.

After the flight landed in Seattle, but before the plane reached the terminal, the pilot announced to the passengers that law enforcement would be meeting the plane and that passengers should remain seated. Walji got out of his seat and came to the back of the plane toward Mr. Dimick and Ms. Betson with panic on his face.

Passenger Alexa Morales saw Walji disregarding the pilot's directions. Ms. Morales saw Walji, whom she had seen consuming alcohol on during the flight, walking to the back of the plane, pacing, and appearing anxious.

Passenger Renee Miner also saw Walji disregarding the pilot's directions. Ms. Miner observed he appeared stressed.

At the back of the plane, Walji looked around. Mr. Dimick told him to return to his seat. Walji said he did not understand. Mr. Dimick asked him to remain seated twice. At one point, Walji said, "I don't believe this."

Port of Seattle Police Department Officers Mark Millet and Walter Chartrand met with Walji after he deplaned and confirmed his identity by his driver's license. After MV1 identified Walji, they spoke with him. Walji declined to provide a statement on a video recording, but agreed to provide a statement. After being advised of his constitutional rights, he said he had two drinks on the plane and that he fell asleep. He said he awoke to MV1's mother accusing him of touching her daughter.

Government's Trial Brief – 4
United States v. Walji, CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Meanwhile, Officer Leavengood, formerly known as Holdeman, spoke with MV1 and her mother. Officer Leavengood took a brief statement from MV1. The officers then took MV1's pants and underwear and secured them into evidence.

The officers then placed Walji under arrest. The officers gave Walji the opportunity to call his wife. While on the phone, Walji said he needed thirty minutes to take care of a matter. Later, Walji made additional calls while in custody.

In the following days, Special Agent Caryn Highly coordinated a forensic interview of MV1 in Alaska. Forensic interviewer Michele Stromme met with MV1 in Alaska at a facility and completed a comprehensive forensic interview with her.

FBI forensic examiner scientist Tiffany Smith performed serological testing and DNA analysis of MV1's underwear and pants. Swabbing from the outside front crotch region of the pants revealed male and female DNA. Investigators obtained a search warrant for Walji's DNA and executed it.

FBI forensic examiner Amanda Bakker analyzed Walji's DNA and compared to the DNA found on outer crotch region of MV1's pants. Ms. Bakker concluded the DNA results from MV1's pants are 6.3 million times more likely if Walji and two unknown, unrelated people are contributors than if three unknown, unrelated people are contributors. The level of support of her conclusion was determined to be very strong support for inclusion.

### III. ELEMENTS OF THE OFFENSES

Walji is charged in Count 1 with Sexual Abuse of a Minor in Special Aircraft Jurisdiction, in violation of Title 18 United States Code, Sections 2243(a), 2246(2) and Title 49 United States Code, Section 46506(1). The elements of that offense are as follows:

First, the defendant knowingly engaged in a sexual act with MV1;

Second, MV1 had reached the age of twelve years but had not yet reached the age of sixteen years;

Third, MV1 was at least four years younger than the defendant; and

Government's Trial Brief – 5
*United States v. Walji*, CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Fourth, the offense was committed at in the special aircraft jurisdiction of the United States.

The government need not prove that the defendant knew the age of MV1 or that the defendant knew that MV1 was at least four years younger than the defendant. Ninth Circuit Model Jury Instruction 20.11.

In this case, "sexual act" means the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. 18 U.S.C. § 2246(2)(D).

Walji is charged in Count 2 with Abusive Sexual Contact in Special Aircraft Jurisdiction, in violation of Title 18 United States Code, Section 2244(b) and Title 49 United States Code, Section 46506(1). The elements of that offense are as follows:

First, the defendant knowingly had sexual contact with MV1;

Second, the sexual contact was without MV1's permission; and

Third, the offense was committed in the special aircraft jurisdiction of the United States.

Ninth Circuit Model Jury Instruction 20.17.

In this case, "sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. 18 U.S.C. § 2246(3).

"Special aircraft jurisdiction of the United States" includes an aircraft outside of the United States that has its next scheduled destination or last place of departure in the United States, if the aircraft next lands in the United States. 49 U.S.C. § 46501(2)(D). "Special aircraft jurisdiction of the United States" also includes an aircraft in flight in the United States. 49 U.S.C. § 46501(2)(C). "In flight" means an aircraft from the moment all external

Government's Trial Brief – 6
United States v. Walji, CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

doors are closed following boarding through the moment when one external door is opened to allow passengers to leave the aircraft. 49 U.S.C. § 46501(1).

## IV. POTENTIAL LEGAL AND EVIDENTIARY ISSUES

### A. Witnesses

The government will separately file its list of intended witnesses. The witnesses are not listed in the order in which the government intends to call them. The government will provide the defense a list of the witnesses it expects to call the day prior to their anticipated testimony. Additionally, depending on the presentation of evidence during the trial, the government may not call each witness identified in the government's witness list.

### B. Statements of the Defendant

The government may introduce evidence regarding statements made by Walji on the airplane, including statements made to MV1, MV1's mother, and flight attendants. The government may also introduce statements made by Walji to a responding Port of Seattle police officers and to others on calls placed by Walji while in custody.

Statements by a defendant are not hearsay when offered by the government against the speaker. Fed. R. Evid. 801(d)(2). An out-of-court statement of a declarant offered by the declarant on his own behalf, however, is inadmissible hearsay because, among other things, it is not a statement by a party-opponent. *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000); *see also Williamson v. United States*, 512 U.S. 594, 600 (1994) (the hearsay rule excludes self-exculpatory statements because such statements "are exactly the ones which people are most likely to make even when they are false").

Before a court may introduce statements made by a suspect in custody and under interrogation, "[t]he government has the burden of proving that the defendant has knowingly and voluntarily waived his *Miranda* rights." *United States v. Heldt*, 745 F.2d 1275, 1277 (9th Cir. 1984). However, a brief detention by immigration and customs officials of persons presenting themselves for admission to the United States is not

Government's Trial Brief – 7
*United States v. Walji*, CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

custody, even though such persons are not free to leave or to refuse to be searched. *United States v. Butler*, 249 F.3d 1094, 1098 (9th Cir. 2001).

Here, Walji made numerous statements to MV1, MV1's mother, and flight attendants while aboard the flight. Walji also made various statements to Port of Seattle police officers after deplaning. He also made statements during calls he placed while in custody. All of the statements of Walji in these various contexts are admissible under Federal Rule of Evidence 801(d)(2) and the Fifth Amendment of the United States Constitution, but only if offered by the government.

### C. Excited Utterances of Minor Victim 1

The government intends to introduce into evidence statements made by MV1 to others aboard the airplane after she was touched by Walji. MV1's statements to her mother and flight attendants are admissible under Fed. R. Evid. 803(2).

Pursuant to Rule 803(2), a statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused are not excluded by the rule against hearsay. In determining whether a statement constitutes an excited utterance under the exceptions to hearsay rule, "[r]ather than focusing solely on the time a statement was made, [courts] consider other factors, including the age of the declarant, the characteristics of the event and the subject matter of the statements." *United States v. Rivera*, 43 F.3d 1291, 1296 (9th Cir. 1995). The lapse of time between the startling event and the out-of-court statement is not dispositive. *Id*.

In this case, shortly after experiencing Walji's assault, 15-year-old MV1 disclosed to her mother what Walji had just done to her. A short time later, MV1 further disclosed the unwanted touching to flight attendants. She was in shock or crying—visibly under the stress of the startling event—at the time she made these various statements. MV1's disclosures are admissible under Fed. R. Evid. 803(2).

### D. Statements Offered for a Non-Hearsay Purpose

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). The admission of hearsay into evidence is generally proscribed by Rule 802.

Government's Trial Brief – 8
*United States v. Walji*, CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

When it is relevant that an out-of-court statement was made, however, and the statement is offered exclusively to prove that it was made, it is not hearsay and is therefore admissible. *See Williams v. United States*, 458 U.S. 279 (1982). That is because statements not offered for their truth are not hearsay. Fed. R. Evid. 801(c).

In certain instances, the government may offer out-of-court statements not to prove the truth of the matters asserted, but merely to explain information possessed by, and the subsequent actions of, the investigative agents, law enforcement officers, and other witnesses. Furthermore, additional out-of-court statements provide necessary context to comprehend the admissible statements of the defendant and others. Because these statements will not be offered for the truth of the matter asserted, the statements would not constitute hearsay as defined by Rule 801(c). *See United States v. Mitchell*, 502 F.3d 931, 966 (9th Cir. 2007) (no error in allowing investigator to testify about out-of-court statements from an informant that caused him to go to a certain location); *see also United States v. Brown*, 923 F.2d 109, 111 (8th Cir. 1991) (out-of-court statement is not hearsay if offered for the limited purpose of explaining why a police investigation was undertaken).

### E. Demonstration of Acts

The government may seek the Court's permission to permit the victim, MV1, to sit in a chair in the well in front of the jury (or wherever directed by the Court) for a limited portion of her testimony so that she may demonstrate to the jurors how she was touched by the defendant.

Demonstrating exactly where MV1 was touched is necessary to establish essential elements of each crime charged, namely that the defendant knowingly engaged in a sexual act with MV1 and that he had sexual contact with MV1. The term "sexual act" is statutorily defined, in part, as the "intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person" 18 U.S.C. § 2246(2)(D). Similarly, the term "sexual contact" is statutorily defined. It is

Government's Trial Brief – 9
*United States v. Walji*, CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

defined, in part, as the "intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person . . . ." 18 U.S.C. § 2246(3).

Here, it is alleged that Walji rubbed MV1's thigh for several minutes and touched her inner thigh. Then, Walji unbuckled MV1's seatbelt, slide his hand into her waistband beneath her underwear and proceeded to touch her genitalia. If MV1 is limited to testifying from the witness stand, jurors will be unable to observe her lower body while she is seated. However, MV1's demonstration in the well of where Walji's hand touched her thigh will allow jurors to see the acts alleged. In addition, the government anticipates the defense may argue that even if Walji touched MV1's thigh, he did not touch her inner thigh. A physical demonstration by MV1 can demonstrate with precision what part of her thigh was contacted while it was being rubbed, which is relevant to an essential element of the offense of Abusive Sexual Contact.

### F. Prior Consistent Statements

Should the defense seek to impugn MV1's credibility at trial, the government may seek to introduce MV1's prior consistent statements pursuant to Rule 801(d)(1)(B)(i) and (ii).

Under Rule 801(d)(1)(B)(i), a statement is not hearsay where "[t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying . . . ." Circuit courts have made clear that prior consistent statements are admissible where the defense opens the door by cross-examining a witness about prior inconsistent statements or suggesting that her testimony is the result of a recent improper influence or motive. *United States v. Montague*, 958 F.2d 1094, 1096 (D.C. Cir. 1992) ("In short, when a defense attorney pursues a line of questioning designed to impugn the motives of a witness, she assumes the risk that the

Government's Trial Brief – 10
*United States v. Walji*, CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

government will introduce rebuttal evidence under Rule 801(d)(1)(B)") (*citing United States v. Simmons*, 567 F.2d 314, 321–22 (7th Cir. 1977)). There is a four-element test to admit prior consistent statements under the rule: (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. *United States v. Chang Da Liu*, 538 F.3d 1078, 1087 (9th Cir. 2008). The prior consistent statement may be introduced through a witness other than the declarant. *United States v. Green*, 258 F.3d 683, 692 (7th Cir. 2001).

In addition, pursuant to Rule 801(d)(1)(B)(ii), a statement is not hearsay where "[t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement is consistent with the declarant's testimony and is offered to rehabilitate the declarant's credibility as a witness when attacked on another ground." Subsection ii was added to the rule in 2014 "to extend substantive effect to consistent statements that rebut other attacks on a witness—such as the charges of inconsistency or faulty memory." Fed. R. Evid. 801 (Advisory Committee's Note to 2014 Amendment); see also *United States v. Flores*, 945 F.3d 687, 705 (2d Cir. 2019) (admitting prior consistent statement where defendant argued that the witness could not be trusted because the incident occurred long ago).

Accordingly, if the defense seeks to challenge MV1's credibility, the government will seek to admit her prior consistent statements under the applicable subpart of Rule 801(d)(1)(B).

### G. Stipulations

The government and the defense have agreed to stipulations related to the admissibility of limited Delta Air Lines business records and to the chain of custody for

Government's Trial Brief – 11
*United States v. Walji*, CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the purpose of admitting certain bulk evidence items related to DNA evidence. Namely, the parties have stipulated to the admissibility of MV1's clothing and Walji's buccal swab without necessitating the testimony of witnesses to establish chain of custody. The parties will provide the Court with stipulations.

## H. Presence of Case Agent During Trial

Federal Rule of Evidence 615 provides that witnesses should be excluded so that they cannot hear other witnesses' testimony. The rule does not authorize exclusion of "an officer or employee of a party which is not a natural person designated as its representative by its attorney," or "a person whose presence is shown by a party to be essential to the presentation of the party's cause." Fed. R. Evid. 615. The United States designates FBI Special Agent Oliver Cunningham, the case agent who had primary investigatory responsibility for this case, as its representative party and requests that he be exempt from exclusion. A case agent is properly exempted from Rule 615 as an officer for the government. *See United States v. Thomas*, 835 F.2d 219, 223 (9th Cir. 1987) (permitting agent to be present during trial as "officer for the government" even though he was called as a witness); *see also United States v. Little*, 753 F.2d 1420, 1441 (9th Cir. 1984) (same).

## I. Recalling Law Enforcement Witnesses and Interrupting Witnesses

The government requests leave to re-call law enforcement witnesses during the course of the trial. First, the government may call the case agent to the stand on more than one occasion to introduce evidence. The government will, of course, attempt to limit the extent to which it is necessary to recall witnesses. In any event, the government does not foresee any potential for prejudice to the defendant through this procedure.

//
//
//
//

Government's Trial Brief – 12
United States v. Walji, CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V. POSSIBLE DEFENSES

The Defendant has not given notice of any defense for which the Federal Rules of Criminal Procedure require notice. Therefore, the government moves to bar any such defense if it were raised during trial.

## VI. RECIPROCAL DISCOVERY

To date, the government has provided over 1,400 pages of discovery to the defense, including documents, law enforcement reports, memoranda, video- and audio-recorded interviews, and transcripts. The government has requested reciprocal discovery from the defense on more than one occasion. As of the date of the filing of this memorandum, the United States has received a single audio file as discovery from the defense. The government renews its motion at this time, and if the government is not afforded adequate time to review the defense's discovery, the government will move to exclude the testimony of implicated witnesses.

//
//
//
//
//
//
//
//
//
//
//
//
//

Government's Trial Brief – 13
*United States v. Walji*, CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## VII. CONCLUSION

The government is not aware of other legal issues that are likely to arise during the course of this trial. If other issues do arise, the government will address those issues by way of a supplemental brief.

DATED this 19th day of August, 2024.

                           Respectfully submitted,

                           TESSA M. GORMAN
                           United States Attorney

                           *s/ Brian J. Wynne*
                           BRIAN J. WYNNE
                           Assistant United States Attorneys
                           LAURA HARMON
                           Special Assistant United States Attorney
                           United States Attorney's Office
                           700 Stewart Street, Suite 5220
                           Seattle, Washington 98101
                           Phone: (206) 553-2268
                           Email: Brian.Wynne@usdoj.gov

Government's Trial Brief – 14
*United States v. Walji*, CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970