The Honorable Tana Lin

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff <br><br> v. <br><br> MUNIR WALJI, <br><br> Defendant. | NO. CR23-011 TL <br><br> GOVERNMENT'S SENTENCING MEMORANDUM <br><br> Sentencing: January 17, 2025, at 10:00 a.m. |

Munir Walji, a man of power and privilege, sexually assaulted a 15-year-old girl aboard a cross-country flight. When Minor Victim 1 (MV1) fell asleep, Walji exploited the opportunity presented and began assaulting her.[1] He first rubbed her thigh and then moved his hand above her vagina leaving his DNA behind on her pants. Walji then unclasped her seatbelt and shoved his hand inside of her pants underneath her underwear. For his brazen acts in carrying out these sex offenses against a teen warrant the Court's imposition of a 30 months of imprisonment and ten years of supervised release.

---

[1] In the Court's order denying Walji's motion for a new trial, the Court referred to MV1 as the "alleged victim". Dkt. 201, pg. 2, line 7. The jury's unanimous verdict establishes beyond a reasonable doubt that MV1 is a victim, not an alleged victim. Addressing her as anything but a victim denies her the dignity and runs afoul of the verdict.

Government's Sentencing Memorandum - 1
*United States v. Walji* – CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 10, 2021, 15-year-old MV1 boarded Delta Air Lines Flight #339 in Atlanta, Georgia with her mother for their second to last leg home from a trip to visit family. Dkt. 188 at 21, 148–151. MV1's mother sat next to the window, while MV1 sat in the middle seat. *Id.* at 151. To MV1's right, sat Munir Walji. *Id.*

Walji struck up conversation with MV1's mother. *Id.* at 151–155. He spoke about his personal history and business history. *Id.* He also spoke encouragingly to MV1, who was a sophomore in high school. *Id.* at 153. He even shared freshly baked cookies he said he obtained in the Delta Air Lines executive lounge. *Id.* at 155. Walji put MV1's mother at ease and offered to buy her a drink. *Id.* at 154.

During the course of the flight, a flight attendant served multiple bourbons to Walji. *Id.* at 34, 52.

Because the flight was an evening flight, the cabin lights were dimmed during the time in-flight service curtailed. *Id.* at 23, 61. MV1's mother fell asleep. *Id.* at 151. Eventually, MV1 drifted off to sleep too. *Id.* at 110–11.

Near the end of the cross-country flight, MV1 awoke to the sensation of Walji touching her leg. *Id.* As she awoke, she saw his left pinky finger was touching her leg. *Id.* She did not think much of it, until a short time later, when he moved his entire hand onto her leg. *Id.* at 113–14. He moved his hand higher on her thigh. *Id.* at 116. MV1 began hyperventilating. *Id.* at 115. She tried to alert her sleeping mother by tapping her, but her efforts were unsuccessful. *Id.* Then, Walji removed his hand from MV1's leg. *Id.* at 120. But then he began touching her again with his other hand. *Id.*

Walji placed his hand on her leg again and continued groping her. *Id.* He moved his hand higher on her thigh and moved it to her inner thigh. *Id.* at 116–17. Then he moved it above her vagina, but under her pants and below her shirt. *Id.* at 118. Walji then unbuckled her lap seatbelt. *Id.* at 121. Next, Walji forced his hand inside her pants under

Government's Sentencing Memorandum - 2
*United States v. Walji* – CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

her underwear. *Id.* at 122. While his hand was inside her pants, Walji moved his fingers in a circular motion on her bare skin. *Id.*

MV1 was in a state of shock as Walji touched her, but as he moved his hand under her underwear, MV1 said something, which caused Walji to withdraw his hand. *Id.* at 123. MV1 turned to her mother and successfully woke her. *Id.* at 124.

MV1's mother saw tears in her daughter's eyes and heard her hyperventilating as she tried to speak. *Id.* at 156. MV1's was not able to speak at first and appeared in shock. *Id.* MV1 then told her mother in a shaky voice what happened. *Id.* at 157. MV1 told her mother the man next to her placed his hand on her leg, moved his hand up her leg, and then down her pants and underwear. *Id.* Although MV1's mother had experience working in stressful situations from her history as a registered nurse, MV1's mother was in shock. *Id.* at 147–48, 158. She got Walji's attention and confronted him. *Id.* at 159. After a period of silence, Walji said he would not do that. *Id.* MV1's mother called for a flight attendant. *Id.* at 159–60. As she did so, Walji touched MV1's arm and said he was sorry she would think he would do that to her. *Id.* at 160. Eventually, as a flight attendant was assisting MV1 and her mother out of the row, Walji said to flight attendant, "she told me what I did." *Id.* at 36, 55.

MV1 and her mother then went to the back of the plane. *Id*. at 162. There, MV1, while crying, recounted for the flight attendants—complete strangers—what had transpired. *Id.* at 37. The flight attendants coordinated a response with the flight crew, which resulted in law enforcement meeting the plane upon landing at SeaTac International Airport. *Id.* at 42.

At the airport, MV1's pants and underwear were taken into evidence. Dkt. 185 at 44. A forensic analysis of MV1's pants was undertaken. *Id.* at 45. Swabbing from the outside front crotch region of the pants revealed male and female DNA. *Id.* An FBI forensic scientist analyzed Walji's DNA and compared to the DNA found on outer crotch

Government's Sentencing Memorandum - 3
*United States v. Walji* – CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

region of MV1's pants. *Id.* at 53–54. The scientist concluded the DNA results from MV1's pants are 6.3 million times more likely if Walji and two unknown, unrelated people were contributors than if three unknown, unrelated people are contributors. *Id.* at 54. The level of support of her conclusion was determined to be very strong support for inclusion. *Id.*

## II. JURY VERDICT

At trial, the jury returned a verdict of guilty to the offense of *Attempted Sexual Abuse of a Minor in Special Aircraft Jurisdiction*, a lesser included charge of *Sexual Abuse of a Minor in Special Aircraft Jurisdiction*. Dkt. 178. The jury also returned a verdict of guilty to the offense of *Abusive Sexual Contact in Special Aircraft Jurisdiction*. *Id.*

## III. STATUTORY PENALTIES

The offense of Attempted Sexual Abuse of a Minor in Special Aircraft Jurisdiction is punishable by a maximum term of imprisonment of 15 years, a fine of up to $250,000, a mandatory minimum period of supervision following release of ten years and a mandatory special assessment of one hundred dollars.

The offense of Abusive Sexual Contact in Special Aircraft Jurisdiction is punishable by a maximum term of imprisonment of two years, a fine of up to $250,000, a mandatory minimum period of supervision following release of five years and a mandatory special assessment of one hundred dollars.

## IV. SENTENCING GUIDELINES CALCULATION

Pursuant to USSG §3D1.2(b), counts 1 and 2 group. The base offense level for the group is 18, pursuant to USSG §2A3.2. PSR ¶ 29. The government agrees with United States Probation that there are no applicable departures from the guidelines and that the total offense level is 18. *Id*. ¶¶ 29-37.

Government's Sentencing Memorandum - 4
*United States v. Walji* – CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Based on his criminal history category of I, Walji's guideline range for the group is 27 to 33 months of imprisonment. *Id.* ¶ 41, 91. Because the applicable guidelines range is in Zone D of the sentencing table, Walji is ineligible for probation under USSG §5B1.1, commentary note 2. *Id.* ¶ 98.

## V. FACTORS RELATED TO SENTENCING RECOMMENDATION

In sentencing the defendant, the Court considers not only the advisory sentencing range calculated under the United States Sentencing Guidelines, but also the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records.

## VI. GOVERNMENT'S SENTENCING RECOMMENDATION

After weighing the section 3553(a) factors, the government respectfully joins the recommendation of United States Probation Office and recommends a sentence of 30 months of imprisonment to be followed by ten years of supervised release. The government's recommended sentence is sufficient by not greater than necessary to carry out the goals of sentencing.

### a. Nature and Circumstance of the Offense

Walji's brazen and aggravated assault against a teenager aboard an airplane warrants a substantial sanction. In this case, Walji lulled MV1's mother into a sense of

Government's Sentencing Memorandum - 5
*United States v. Walji* – CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

security and then, after both MV1 and her mother were asleep, he assaulted MV1. He first touched her leg and then after seeing that he could move beyond the line he crossed, he moved his hand to her genitals over her pants. Walji then pushed further, unlatching MV1's seatbelt and forcing his hand inside of her pants under her underwear. It was only then that MV1 was able to bring Walji's assault to an end. A sex offense of this sort against a young person no less, is a particularly egregious offense.

Sadly, the effect of the sexual assault may have lasting impacts on MV1 because it is well established that the impacts of sexual assaults do not end when the crime is completed. The Rape, Abuse & Incest National Network (RAINN)[2] consolidates considerable data on the life-long impacts of sexual trauma.

- 94% of women who are raped experience symptoms of post-traumatic stress disorder (PTSD) during the two weeks following the rape.[3]
- 30% of women report symptoms of PTSD 9 months after the rape.[4]
- 33% of women who are raped contemplate suicide.[5]
- 13% of women who are raped attempt suicide.[6]
- Approximately 70% of rape or sexual assault victims experience moderate to severe distress, a larger percentage than for any other violent crime.[7]

People who have been sexually assaulted are more likely to use drugs than the general public.[8]

- 3.4 times more likely to use marijuana;

---

[2] Rainn.org
[3] D.S. Riggs, T. Murdock, W. Walsh, A prospective examination of post-traumatic stress disorder in rape victims. Journal of Traumatic Stress 455-475 (1992).
[4] J. R. T. Davidson & E. B. Foa (Eds.) Posttraumatic Stress Disorder: DSM-IV and Beyond. American Psychiatric Press: Washington, DC. (pp. 23-36).
[5] DG Kilpatrick, CN Edmunds, AK Seymour. Rape in America: A Report to the Nation. Arlington, VA: National Victim Center and Medical University of South Carolina (1992)
[6] Id.
[7] Department of Justice, Office of Justice Programs, Bureau of Justice Statistics, Socio-emotional Impact of Violent Crime (2014).
[8] DG Kilpatrick, CN Edmunds, AK Seymour. Rape in America: A

Government's Sentencing Memorandum - 6
*United States v. Walji* – CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- 6 times more likely to use cocaine; and
- 10 times more likely to use other major drugs.

Sexual violence also affects victims' relationships with their family, friends, and co-workers.[9]

- 38% of victims of sexual violence experience work or school problems, which can include significant problems with a boss, coworker, or peer.
- 37% experience family/friend problems, including getting into arguments more frequently than before, not feeling able to trust their family/friends, or not feeling as close to them as before the crime.
- 67% of survivors who were victimized by a stranger experience professional or emotional issues, including moderate to severe distress, or increased problems at work or school.

Unfortunately, MV1's mother's victim impact statement demonstrates some of these negative outcomes of sexual abuse have already been experienced by MV1. As a result of this offense, MV1 secluded herself from her classmates and teachers and eventually could no longer attend school. Victim statement at pgs. 2–3. Eventually, she lost her entire 10th grade year. *Id.* MV1's mother saw MV1 move through phases of grief and victimization from shock to sadness, anger, and isolation. *Id.* at 3. MV1's mother saw her "happy, spunky, beautiful girl" lost to "pain and confusion." *Id.* at 2–3. While MV1 is in no way predestined for any particular outcome in her life, research shows her victimization by Walji, particularly at a formative time in her life, puts her at risk for considerable negative life outcomes beyond those experienced already.

Although MV1's victimization is rightfully the focal point of MV1's mother's attention, her letter also shows how offenses of the sort committed by Walji impact others

---

[9] Department of Justice, Office of Justice Programs, Bureau of Justice Statistics, Socio-emotional Impact of Violent Crime (2014).

Government's Sentencing Memorandum - 7
*United States v. Walji* – CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

too. In her letter, MV1's mother notes the secondary trauma she experienced as a result of this offense. MV1's mother missed eight weeks of work to care for her daughter, and she needed to engage in counseling to cope with the effects of the assault on her daughter. Her letter further reveals how this offense impacted others in their community at home. The impact of offenses like the one committed by Walji spread far and wide and are, unfortunately, lasting.

The nature and circumstances of Walji's acts, which constitute a series of intentional and methodical steps targeting a teenage girl to satisfy his sexual desires, weigh heavily in favor of the joint United States Probation Office and government recommendation of 30 months in custody.

b.    *History and Characteristics of the Defendant*

The nature and circumstances of the offense support the government's recommendation, and Walji's history and characteristics provide no mitigation.

Walji was raised with his brothers in a home with two loving parents. PSR ¶¶ 47–49. Before being forced to leave the country of his birth, Walji's father's business success allowed the family to live in a home staffed by domestic workers. *Id*. ¶ 49. After obtaining a degree, Walji engaged in various entrepreneurial ventures. Walji is a successful businessperson, having operated a candy manufacturer and hospitality operations. PSR ¶¶ 52–57. Walji has been married since 1980 and has two adult children. *Id*. ¶ 53.

Despite Walji's history of family support, opportunity, and career success, he chose to engage in behavior worthy of society's condemnation. He chose to take advantage of a sleeping 15-year-old girl on a plane who did not know how to respond to this adult male's nonconsensual sexual advances. While Walji may highlight his medical issues as mitigating circumstances warranting a variance from the guidelines, as noted in the United States Probation recommendation, Walji's physical health and medical

Government's Sentencing Memorandum - 8
*United States v. Walji* – CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

conditions "did not deter or prevent him from committing the offenses." United States Probation further noted, "[i]t does not appear the danger he poses to the community-at-large is diminished by his medical conditions."

Nothing in Walji's history or characteristics supports a downward variance from the joint recommendation of U.S. Probation and the government.

        c.     *The Need to Promote Respect for the Law, Provide Just Punishment, Afford Deterrence, and Avoid Sentencing Disparity*

The government's recommended sentence promotes respect for the law, provides a just punishment, and affords deterrence to others thereby protecting the public. Furthermore, the government's recommended sentence avoids sentencing disparity.

Reports of airline sexual assaults are on the rise. While their occurrence are not likely new, the increase in *reports* likely reflects an increased societal desire to hold perpetrators of sexual offenses accountable. All sex offenses demand a significant punishment,[10] and other cases of airline sex offenses from this District and the Ninth Circuit are illustrative of appropriate punishments.

In 2020, Babak Rezapour was sentenced in the Western District of Washington to 24 months of imprisonment and one year of supervised release after Rezapour was convicted of Abusive Sexual Contact in Special Aircraft Jurisdiction and Abusive Sexual Contact of an Incapable Victim in Special Aircraft Jurisdiction for his assault of an adult victim.

In 2023, a court in the Central District of California sentenced Mohammad Ansari to 21 months of imprisonment after he touched the inner thigh of an adult who was sleeping next to him.

---

[10] In its sentencing memorandum, Defense states that if Mr. Walji's sexual assault had happened on the ground in Seattle, Mr. Walji would have been charged with a gross misdemeanor. It is unhelpful and speculative to elude to potential penalties in other jurisdictions. If the assault had happened on the ground in Atlanta, for example, is equally unhelpful. Even so, defense ignores that Child Molestation in the Third Degree would be the most accurate Washington offense, which is a felony sex offense that carries a minimum of 6 months in jail. RCW 9A.44.089.

Government's Sentencing Memorandum - 9
*United States v. Walji* – CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  In 2024, again in the Western District of Washington, Milan Jurkovic was
2  sentenced to eight months of imprisonment and five years of supervised release after
3  Jurkovic was convicted of *Abusive Sexual Contact* for touching the inner thigh of a
4  teenage victim aboard an international flight.
5  Unlike in the *Jurkovic* and *Ansari* cases, where the defendants touched only the
6  inner thighs of their victims, in this case Walji touched MV1's inner thigh and then
7  forced his hand inside MV1's pants and below her underwear and touched her body
8  immediately above her genitalia. The government's recommended sentence accounts for
9  the fact that MV1 was only a teenager at the time of the offense, that she was sleep when
10  Walji commenced his assault, and it accounts for the egregiousness of Walji's unwanted
11  touching. This sentence would serve to deter Walji from this type of conduct, and it
12  would send a strong message to others that sexually assaulting passengers on airlines,
13  particularly minors, will result in significant consequences. Moreover, Walji will be able
14  to receive treatment for his medical conditions while in the custody of the Bureau of
15  Prisons.
16  //
17  //
18  //

Government's Sentencing Memorandum - 10
*United States v. Walji* – CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## VII. CONCLUSION

Munir Walji, a man of power and privilege, sexually assaulted a girl in a brazen act aboard an airplane. The government joins U.S. Probation in respectfully recommending a sentence of 30 months of imprisonment to be followed by ten years of supervised release. Imposing any sentence other than a guidelines-based term of imprisonment in the year 2025 would be nothing less than an injustice.

DATED this 10th day of January, 2025.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

*s/ Laura Harmon*
LAURA HARMON
Special Assistant United States Attorney
BRIAN J. WYNNE
Assistant United States Attorney
United States Attorney's Office

Government's Sentencing Memorandum - 11
*United States v. Walji* – CR23-011 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970